UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-CV-61374-WILLIAMS
MAGISTRATE JUDGE REID

SANDRA SYSYN,

    Petitioner,

    v.

JULIE JONES,[1]

    Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.  Introduction

The *pro se* petitioner, **Sandra Sysyn**, has filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of her conviction and sentence, entered following a trial in the Seventeenth Judicial Circuit, Broward County, case no. 97-12889CF10A.

This Cause has been referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D.Fla. Local Rule 1(f) governing

_____

[1] Julie L. Jones is no longer the Secretary of the Department of Corrections.   Mark S. Inch is now the proper respondent in this proceeding.   Inch should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts.

For its consideration of the petition [ECF 1], the Court has the respondent's response [ECF 14] to this Court's order to show cause, along with its supporting exhibits [ECF s8,9], as well as Petitioner's reply [ECF 10].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519 (1972), Petitioner raises the following grounds:

> **Claim 1**: Ineffective assistance of trial counsel for failing to object at various points throughout the trial [ECF 1, p. 7-10];
>
> **Claim 2**: Ineffective assistance of trial counsel for failing to conduct an adequate pre-trial investigation [ECF 1, p. 11-13];
>
> **Claim 3**: Ineffective assistance of trial counsel for failing to object to the prosecutor's improper comments [ECF 1, p. 14-19]; and
>
> **Claim 4**: Ineffective assistance of trial counsel for failing to object to a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). [ECF 1, p. 21-23].

Because the Petitioner raises over fifty sub-claims, the Undersigned has created a detailed list of all Petitioner's arguments in an appendix, attached to this report. The Undersigned relies on the same number system the Petitioner and state used in their respective court filings.

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned recommends that Petitioner's motion be denied because Petitioner is

not entitled to relief on the merits.

## II.   Factual and Procedural History

The state charged Petitioner with first degree murder. [ECF 10, Exhibit 2]. She proceeded to trial. [ECF 10, Exhibit 29, Trial Transcript, hereinafter "T."].

The state introduced the following evidence. On the night of the crime, Matthew Fisher; Kimberly Butts; the victim; and Petitioner were hanging out at Petitioner's house and using drugs and alcohol. [T. 1210]. Drugs were all over the house. [T. 1138-40]. According to Butts, Petitioner used a large amount of cocaine, Vicodin, and marijuana before the shooting. [T. 1102]. Fisher also confirmed that Petitioner was using cocaine on the night in question. [T. 843].

According to Butts's testimony at trial, Butts had scraped her arm on a bamboo fence a few days earlier. [T. 1051-60]. However, Petitioner saw the marks and believed that the victim intentionally poked Butts with a hypodermic needle that was infected with HIV. (*Id.*). Petitioner knew the victim had hepatitis and believed she also had HIV. [T. 830]. Petitioner became angry but eventually calmed down. [T. 1067-68].

The victim received a message and asked if Petitioner would drive her to a friend's house. [T. 1077-79]. Petitioner agreed and the two left together. (*Id.*).

Petitioner gave a sworn statement to police, introduced by the state at trial,

which provided the following. As Petitioner and the victim left the house, the latter grabbed Petitioner's gun. [T. 829]. Petitioner had the clip and put it into the gun while talking to the victim. (*Id.*). While both in the car, Petitioner asked the victim whether she had injected Butts with a hypodermic needle. [T. 831]. All of a sudden, Petitioner felt a sharp prick on her arm. (*Id.*). Believing the victim was trying to inject her with HIV, Petitioner grabbed the gun, fired into the floor, then lifted the weapon towards the victim and shot. (*Id.*). Petitioner opened the door and the victim fell out of the car. Petitioner then quickly drove home, ran inside, changed her shirt, and washed off some of the blood. [T. 831-32]. When she went back outside, the cops had arrived. [T. 832].

Patrol Officer Marino observed Petitioner's car speed past him. [T. 642-47]. A passerby informed Marino that the driver had just pushed a body out of the car. [T. 648-51]. Marino gave chase and found the car had crashed into an electrical box in front of Petitioner's house. [T. 652-54]. Officers observed Petitioner remove a firearm from the vehicle; at which point, they seized the gun and took Petitioner into custody. [T. 655-60]. As Marino placed handcuffs on Petitioner, she yelled out to Butts, "I was trying to cop some drugs and the bitch pulled a knife." [T. 662].

Detective Dandelet conducted interviews with Petitioner, Butts, and Fisher. Petitioner told him that the victim pricked her with a needle. [T. 799-850, 794-96].

4

Dandelet observed her arm and saw no needle marks. [T. 810-15]. Officers did not recover a syringe in the car or at the place where the victim fell out of the car. [T. 787-89, 850-51, 1286-92]. The victim later died from the gunshot wound at the hospital. [T. 1346-60].

Over defense objection, Dandelet testified that Butts informed him that Petitioner threatened to kill the victim in the past and that Petitioner was in a rage on the night of the shooting. [T. 969-70].

After the state closed, defense counsel moved for a judgment of acquittal, which the court denied. [T. 1433-37].

Petitioner testified at trial in her own defense as follows. Petitioner and the victim knew each other because they both attended Alcoholics/Narcotics Anonymous ("AA/NA") meetings. [T. 1640]. At one such meeting, the victim shared that she was HIV positive. [T. 1129, 1490-91]. The victim had a reputation in the community for being violent and dangerous. [T. 1476-81]. The victim used drugs, had unprotected sex, shared needles, and attempted suicide several times. [T. 1488-92]. Petitioner claimed that she was scared of the victim. [T. 1492].

Petitioner's testimony regarding the events which unfolded in the car was mostly consistent with her police statement. [T. 1515-27]. However, she alleged that the gun went off when she pointed it at the victim. [T. 1524-25]. In addition,

Petitioner minimized her drug use when speaking to officers following the shooting because she was ashamed. [T. 1534].

Defense counsel called several other witnesses at trial. Janet Hanlin and Sandra Smith testified that the victim was known for being violent, dangerous, aggressive, suicidal, and infected with AIDS. [T. 1622-27, 1637-45].

Nurse Joanne Rasoner testified that when Petitioner was booked into the Broward County Jail, she appeared to have a needle mark on her right forearm, with slight swelling. [T. 1690-98, 1735-37]. Nurse Reasoner conceded on cross-examination that she had no independent memory of these marks, and was relying on the medical report written up at the time. [T. 1744-50].

Forensic scientist Mr. James testified that he examined Petitioner's residence and found blood stains in the bathroom which could have come from the syringe injury Petitioner believed the victim inflicted. [T. 17755-77].

Petitioner's mother testified that she found several hypodermic needles and other drug paraphernalia in Petitioner's house. [T. 1819-22]. She conceded on cross-examination that the needles were clean. [T. 1827].

The state called Nurse Margaret Warner as a rebuttal witness. Warner was present at the Broward County Jail during Petitioner's intake and did not hear Petitioner complain about being stabbed with a needle, nor did her reports reflect

such a complaint. [T. 1852].

At the close of all evidence, defense counsel again moved for a judgment of acquittal without success. [T. 1855-1860].

The jury returned a verdict of guilty as charged. [ECF 10, Exhibit 3]. The trial court adjudicated Petitioner guilty and sentenced her to life in prison. [ECF 10, Exhibit 5].

Petitioner filed a notice of appeal to the Fourth District Court of Appeal ("Fourth DCA"). [ECF 10, Exhibit 6]. In the initial brief, Petitioner argued (1) the trial court erred in admitting prejudicial portions of Petitioner's statement to police, (2) the trial court erred in allowing the state to peremptorily strike prospective juror Mary Chambers, (3) the trial court erred in allowing prosecution witness Kimberly Butts to offer her opinion that Petitioner committed the crime because of "cocaine psychosis;" (4) the trial court erred in excluding expert testimony from a defense witness; (5) the trial court erred in allowing Detective Dandelet to testify regarding Kimberly Butts's hearsay statements to him; and (6) the prosecutor committed intentional misconduct through his numerous improper and highly prejudicial statements at trial. [ECF 10, Exhibit 7]. The state filed an answer brief. [ECF 10, Exhibit 8]. Petitioner filed a reply. [ECF 10, Exhibit 9]. The Fourth DCA affirmed in a written opinion which addressed claim four. *See Sysyn v. State*, 756 So. 2d 1058

7

(Fla. 4th DCA 2000).

Petitioner filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court, and brief in support of jurisdiction. [ECF 10, Exhibit 12, 13]. The state filed a brief against jurisdiction. [ECF 10, Exhibit 14]. The Florida Supreme Court denied the petition for review and declined jurisdiction on **October 13, 2000**, in *Sysyn v. State*, 773 So. 2d 57 (Fla. 2000). For purposes of the federal one-year limitations period, the foregoing conviction became final at the latest on **January 11, 2001**,[2] at the expiration of the ninety-day period for seeking certiorari review with the Supreme Court of the United States. *See* Sup. Ct. R. 13.3; *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012).[3]

The limitations period ran for **266 days** until **October 4, 2001**, when Petitioner filed a motion for post-conviction relief pursuant to **Rule 3.850**. Petitioner argued, through counsel, that trial counsel was ineffective for (1) failing to object at

---

[2] Under Fed. R. Civ. P. 6(a)(1), "in computing any time period specified in . . . any statute that does not specify a method of computing time . . . [the court must] exclude the day of the event that triggers the period [,] count every day, including intermediate Saturdays, Sundays, and legal holidays [, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday.

[3] *Gonzalez v. Thaler*, 565 U.S. at 149 (holding that conviction becomes final upon expiration of time for seeking direct review); *Jimenez v. Quarterman*, 555 U.S. 113, 118-21 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). *See also Clay v. United States*, 537 U.S. 522, 527 (2003)(holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."); *Chavers v. Secretary, Florida Dept. of Corrections*, 468 F.3d 1273 (11th Cir. 2006)(holding that one-year statute of limitations established by AEDPA began to run 90 days after Florida appellate court affirmed habeas petitioner's conviction, not 90 days after mandate was issued by that court).

trial to portions of Petitioner's statement, which were the subject of a pretrial motion to exclude; (2) failing to object to references to Petitioner's drug use; (3) failing to object to Petitioner's statements, which tended to refute the claim of self-defense; (4) failing to object to the detective's testimony that Petitioner said that she was a former intravenous drug user; (5) failing to object to Kimberly Butts's testimony that Petitioner was doing massive quantities of cocaine, Vicodin, and pot before the incident; (6) failing to object to Matthew Fisher's testimony that everyone in the house, including Petitioner, was smoking cocaine before the incident; (7) failing to renew the objection to the peremptory strike of prospective juror Mary Chambers; (8) failing to move to recuse the trial judge because of the prosecutor's prior relationship with him; (9) failing to move to limit testimony regarding Petitioner's homosexuality; (10) failing to move for mistrial due to the trial court's bolstering of the credibility of state witnesses; (11) failing to move for a jury inquiry or mistrial after overhearing the victim's family speaking to members of the jury during a recess; (12) failing to have the murder weapon tested; (13) failing to have the blood splatter on the bathroom wall DNA tested; (14) failing to interview the victim's girlfriend regarding a conversation that she had with the victim prior to the murder; (15) failing to interview a neighbor, Richard Wallice, regarding his observation of puncture wounds consistent with intravenous drug use on Kimberly Butts; (16)

failing to interview exculpatory defense witness, Cheryl Sloan; (16) failing to have the blood splatter on Petitioner's shorts tested for DNA evidence; (17) failing to object to numerous comments made by the prosecutor; and (18) failing to investigate the prosecutor's failure to disclose the results of testing on a blood sample provided by Petitioner. [ECF 10, Exhibit 16].

On April 23, 2002, the state filed its original response. [ECF 10, Exhibit 17]. On March 21, 2012, Petitioner, through counsel, filed a reply to the state's response. [ECF 10, Exhibit 18]. On October 13, 2014, the state filed a response to the reply. [ECF 10, Exhibit 19]. On March 3, 2016, the trial court denied the motion for post-conviction relief [ECF 10, Exhibit 20].   It is unclear from the record why so much time elapsed between these various filings. Petitioner filed a notice of appeal in the Fourth DCA, along with an initial brief [ECF 10, Exhibit 21,22]. The Fourth DCA *per curiam* affirmed without written opinion in *Sysyn v. State*, 224 So. 3d 238 (Fla. 4th DCA 2017). Petitioner filed a motion for written opinion and rehearing, which the Fourth DCA denied. [ECF 10, Exhibit 24, 25]. Mandate issued on **May 19, 2017**. [ECF 10, Exhibit 26].

The limitations period ran for **49 days** until Petitioner came to this court filing the instant § 2254 motion on **July 7, 2017**,[4] the date she handed her motion to prison

---

4 The State of Florida and the Eleventh Circuit recognize that "[U]nder the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for

officials for mailing. [ECF 1, p. 29].

As is indicated above, 315 days (266+49) of untolled time elapsed between the date on which the conviction/sentence became final and the date Petitioner initiated these proceedings. As a result, the Respondent correctly concedes that the instant petition is **timely**. [ECF 10, p. 7-8].

The respondent also correctly asserts that Petitioner **properly exhausted** the claims raised here in the state courts. [ECF 10, p. 25]. Petitioner raised each of the alleged ineffective assistance of counsel claims in her Rule 3.850 motion, in constitutional terms by challenging her sixth amendment right to counsel, and on direct appeal from the trial court's order denying same. However, for the reasons put forth below, Petitioner is not entitled to relief on the merits.

### III. <u>Governing Legal Principles</u>

The court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga.*

---

mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); *Griffin v. Sistuenck*, 816 So. 2d 600 (Fla. 2002)(date of service in prisoner's certificate of service was used as the filing date); Fed. R. App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he/she signed it. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); *Adams v. United States*, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

*Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 1432 (2017). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford*, 818 F.3d at 642 (*quoting Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Ledford*, 818 F.3d at 642 (*quoting Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). *See also Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits," in the state forum, § 2254(d)

prohibits relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved an unreasonable application of, clearly established Federal law,[5] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington*, 562 U.S. at 97-98. *See also Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. den'd*, 137 S. Ct. 2298 (2017).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (*quoting Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *Harrington*, 562 U.S. at 102. As applied here, to the extent Petitioner's claims were adjudicated on the merits in

---

[5]"Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *White*, 572 U.S. at 419; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (*citing Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

the state courts, they must be evaluated under § 2254(d).

Petitioner alleges **ineffective assistance of counsel**. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** as a result of that deficiency. *Strickland*, 466 U.S. at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra*. *See also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776 (1987)).

14

Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

## V. <u>Discussion</u>

### <u>Claim 1</u>

Under claim 1, Petitioner alleges ineffective assistance of trial counsel for failing to object at various points throughout the trial [ECF 1, p. 7-10]. Petitioner provides a laundry list of errors, without providing much detail.

15

Under **claims 1a, 1b, 1d, 1e**, and **1f**, Petitioner challenges her counsel's failure to object to evidence regarding her **drug use** on the night of the incident and in the years prior. [ECF 1, p. 7-9]. Plaintiff specifically takes issue with evidence regarding drug use admitted through testimony provided by Kimberly Butts [T. 1102], Matthew Fisher [T. 1201], Officer Dandelet [T. 799-850], and in her police statement [T. 843].

The test for the admissibility of evidence is relevance. *See* Fla. Stat. § 90.402. Relevant evidence is defined by statute as "evidence tending to prove or disprove a material fact." Fla. Stat. § 90.401. "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." Fla. Stat. § 90.403. As such, "the prerequisite to admissibility is relevancy." *Dorsett v. State*, 944 So. 2d 1207, 1212 (Fla. 3d DCA 2006). In Florida, to determine whether evidence is relevant the court looks to the elements of the crime charged to determine whether the evidence tends to prove or disprove a material fact. *Guerrero v. State*, 125 So. 3d 811, 814 (Fla. 4th DCA 2013) (citation omitted). These same principles applied during Petitioner's trial in 1999. *See Sexton v. State*, 697 So. 2d 833 (Fla. 1987).

Here, Petitioner's history of drug use was made relevant by Petitioner herself.

Petitioner voluntarily testified regarding her past struggles with addiction and that she met the victim through a treatment program. [T. 1464, 1474]. In order to convey to the jury how Petitioner came to believe that the victim was HIV positive, a fact which was crucial to her self-defense argument, Petitioner testified that the victim revealed this information at an NA meeting. [T. 1490-1491]. As a result, Petitioner cannot establish prejudice under *Strickland*. Even assuming counsel successfully objected to all references of Petitioner's drug history, it would not have shielded the jury from this fact in light of Petitioner's own testimony at trial. Petitioner cannot establish that but for counsel's failure to object, the outcome would have been different.

The evidence regarding Petitioner's drug use on the night in question was also relevant. Petitioner admitted in her police statement and during her direct examination that she was using drugs that evening. Any other evidence on this issue was merely cumulative of evidence voluntarily admitted by Petitioner as the fact that intravenous drug use was occurring on the night of the shooting was important to Petitioner's defense. Furthermore, Butts and Fisher were eyewitnesses to the events immediately prior to the shooting and simply testified to their observations. Even assuming counsel objected, it is unlikely that the trial court would have sustained. Petitioner again cannot establish deficient performance or prejudice under *Strickland*

17

in connection with counsel's failure to object to the evidence regarding drug use on the night the crime took place.

Under **claim 1c**, Petitioner alleges ineffective assistance of counsel for failing to object to a portion of Petitioner's cross-examination which allegedly refuted her self-defense argument. [ECF 1, p. 7-9]. In raising this issue in her Rule 3.850 motion, Petitioner cited page 1549 of the transcript *see* [ECF 10-1, p. 205], during which the prosecutor cross-examined her as follows:

> Q. [Y]ou were still angry at [the victim] because you think that you saw some needle marks on one of your friends that was caused by her, right?
>
> A. I was afraid.
>
> Q. And you were angry about that too, weren't you?
>
> A. I wasn't particularly angry. I was more afraid because I was not sure that she had done anything to Kim. It was just my fear that she had.
>
> Q. So here you are in this confined vehicle a foot and a half from [the victim], and you have a loaded gun and you decide now to confront her about the needle marks, right?
>
> A. Yes, I asked her about that.
>
> Q. In fact, you used the word confronted her before to the police in your sworn statement to them, right?
>
> A. Yes.
>
> Q. And when you confronted [the victim] while you were in control over this loaded gun in your confined vehicle, there was some screaming between you, right?

A. Yes.

[T. 1549].

On cross-examination, the prosecutor can " delve further into issues raised during the direct examination and to impeach a witness's credibility." *Butler v. State*, 842 So. 2d 817, 824-25 (Fla. 2003) (citing *Steinhorst v. State*, 412 So. 2d 332, 337 (Fla. 1982); *Diaz v. State*, 747 So. 2d 1021, 1023 (Fla. 3d DCA 1999)). Furthermore, the prosecutor's cross-examination "is not limited to the exact details testified to on direct examination but extends to the whole subject and all matters that modify, supplement, contradict, rebut or make clearer the direct testimony." *Id.* (citing *Chandler v. State*, 702 So. 2d 186 (Fla. 1997); *Geralds v. State*, 674 So. 2d 96 (Fla. 1996)). Under Florida statutory law, the prosecutor can cross-examine the defendant in order to attack her credibility by:

(1)     Introducing statements of the witness which are inconsistent with the witness's present testimony.

(2)     Showing that the witness is biased.

(3)     Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610.

(4)     Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified.

(5)     Proof by other witnesses that material facts are not as testified to

by the witness being impeached.

*See* Fla. Stat. § 90.608 (1998).[6]

Contrary to Petitioner's argument, counsel had no basis to object to the prosecutor's questions. Petitioner testified regarding the events which unfolded in the car on direct examination. As a result, the prosecutor's questions were within the scope of the direct. *See McCrae v. State*, 395 So. 2d 1145, 1151 (Fla. 1980) (the scope of cross-examination should generally be no broader than the scope of direct examination). Furthermore, the prosecutor cross-examined Petitioner on her statement to police, which the state introduced during the state's case-in-chief, as well as the testimony of Kimberly Butts regarding Petitioner's motive. Any objection to this line of questioning would have been meritless. Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler*, 240 F.3d at 917.

Under **claim 1g**, Petitioner alleges ineffective assistance of counsel for failing to renew the objection to the state's use of a peremptory strike of prospective, African-American juror, Mary Chambers.   [ECF 1, p. 7-9].

Every person charged with a crime is entitled to a fair, trial before an impartial jury of his or her peers. Art. 1, Sec. 16, *Florida Constitution*. The jury venire from which the petit jury is chosen must represent a fair cross-section of the community.

---

[6] This version of the statute remains in effect and has been in effect since 1995.

*Taylor v. Louisiana*, 419 U.S. 522 (1975). Accordingly, the right to peremptory challenges is to "aid and assist" in the selection of an impartial jury and is not to be used "as a scalpel to excise" an identifiable group from a representative cross-section of society for to do so would "encroach upon the constitutional guarantee of an impartial jury." *State v. Neil*, 457 So. 2d 481,486 (Fla. 1984) (Peremptory challenges cannot be exercised solely on the basis of race). *See also State v. Slappy*, 522 So. 2d 18 (Fla.), *cert. denied*, 487 U.S. 1219 (1988). The Florida courts look to both the Florida Constitution and Federal Constitution's guarantee of the right to an impartial jury and equal protection provisions. *See Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996).

The Florida Supreme Court stated the procedure for evaluating alleged racial bias in the exercise of peremptory challenges as follows:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: (a) make a timely objection on that basis; (b) show that the venire person is a member of a distinct racial group, and (c) request that the court ask the striking party its reason for the strike.

*Id.* at 764. The burden then shifts to the party who made the strike to provide a race-neutral explanation. *Id.* If the reason given is race neutral and "the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike would be sustained." *Id.*

Under Florida law, trial counsel must press the already rejected challenge a second time at the conclusion of voir dire, before the swearing in of the jury, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim. *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993) (requiring a contemporaneous objection to preserve a claim of improperly selected jury). *See also Melbourne v. State*, 679 So. 2d 759, 765 (Fla. 1996) (ruling that a defendant "failed to preserve" a claim of discriminatory jury selection "because she did not renew her objection before the jury was sworn").

In this case, the state used a peremptory strike against Mary Chambers. Defense counsel objected and requested that the court require the state to provide a race neutral and gender-neutral reason for the challenge. The state explained it struck Chambers because she was a nurse and Petitioner was seeking to call nurses to testify in her defense. [T. 481]. The trial court sustained the strike. Defense counsel failed to raise the matter again at the conclusion of voir dire. As a result, the issue was not properly preserved for direct appeal.

Counsel's failure to raise the objection to Mary Chambers at the end of voir dire arguably constituted deficient performance. However, Petitioner has failed to establish prejudice under *Strickland*. Petitioner has not presented in the state forum or this habeas proceeding any facts or evidence that the prosecution's strike was

racially based or otherwise invalid. In light of Mary Chamber's employment background, the prosecutor could have believed that she would be biased in favor of the nurses scheduled to testify in support of the defense. Petitioner has not demonstrated here that the challenged venireperson was improperly excused for a non-race-neutral reason. *See* 28 U.S.C. § 2254(e)(1).

Under **claim 1h**, Petitioner alleges ineffective assistance of counsel for failing to move to recuse the trial judge after learning of the prosecutor's previous relationship with the judge. [ECF 1, p. 7-9].

Defense counsel asked the trial judge about his relationship with the prosecutor [T. 921-922]. On the record, the prosecutor stated that he had known the judge when he, the prosecutor, was a state senator and had seen the judge at political events when there were hundreds of people in attendance [T. 923-924]. The prosecutor said that he never had a personal relationship with the judge, and the trial judge agreed that he did not know much about the prosecutor aside from seeing him at public gatherings [T. 924, 925]. The trial court invited defense counsel to file a motion to recuse, however, defense counsel did not file such a motion. [T. 926-35].

It is well settled that the accused in any criminal trial is guaranteed the right to an impartial tribunal. *See Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993), *cert. denied*, 511 U.S. 1026 (1994); *Bradshaw v. McCotter*, 785 F.2d 1327, 1329

(5th Cir.), *modified*, 796 F.2d 100 (5th Cir. 1986). The judge's bias must be personal and extrajudicial, deriving from something other than the case. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). *See also McWhorter v. City of Birmingham*, 906 F.2d 674, 678-79 (11th Cir. 1990); *Wiley v. Wainwright*, 793 F.2d 1190, 1193 (11th Cir. 1986). The appearance of bias, however, is insufficient to establish a due process violation requiring recusal of a state judge. *See Davis v. Johnson*, 506 F.3d 1325 (11th Cir. 2007).

At most, the judge and the prosecutor had an arms-length, professional relationship rather than a personal relationship. The facts in this case do not even rise to the appearance of bias. Presumably, defense counsel did not go forward with a motion to recuse because it was a meritless issue. As a result, Petitioner cannot establish deficient performance or prejudice under *Strickland*.

Under **claim 1i**, Petitioner alleges ineffective assistance of counsel for failing to object to testimony regarding Petitioner's sexual orientation. [ECF 1, p. 7-9].

The state elicited from testimony from Kimberly Butts that she and Petitioner had a romantic relationship in order to show Butts's bias in Petitioner's favor during her statements to the police. [T. 1048-49]. All other references to Petitioner's sexual orientation were made by defense witnesses and Petitioner herself. *See* [T. 1622-27, 1636, 1640-43].

Petitioner further alleges in her motion that the prosecutor described Petitioner as a "bike dyke," without identifying a specific page in the transcript. The record refutes this allegation. Petitioner also alleges that counsel should have objected during the state's cross-examination of Petitioner to the fact that she rode a Harley-Davidson motorcycle [T. 1600], had tattoos [T. 1607-09], and was a "tough" individual [T. 1604]. The prosecutor was attempting to refute the impression Petitioner gave throughout her defense that the victim was aggressive and violent, while Petitioner was the opposite.

At one point, defense counsel did, in fact, object to this line of questioning. The prosecutor explained:

> I can question a witness about whatever goes to their credibility, and this is one of the things I want to question her about. It's an area that she's trying to give a perception to the jury that I think I have a right to go into.

[T. 1603-04]. The court overruled defense counsel's objection.

In light of the foregoing, any argument that trial counsel was ineffective in failing to object to testimony/evidence regarding her sexual orientation is undermined by the fact that Petitioner herself informed the jury of her sexual orientation when presenting her defense. To the extent she argues counsel was ineffective for failing to object to the prosecutor's cross-examination regarding her "toughness," counsel did, in fact, object at one point, without success. As a result,

Petitioner cannot establish that additional objections would have resulted in a different outcome.

Under **claim 1j**, Petitioner alleges ineffective assistance of counsel for failing to object to the court's bolstering of state witnesses. [ECF 1, p. 7-9]. Petitioner does not cite to any specific page of the transcript; however, her counsel cited page 1437 in her Rule 3.850 motion in connection with this claim. [ECF 10-1, p. 206].

The discussion referenced by Petitioner's Rule 3.850 counsel took place outside the presence of the jury. *See* [T. 1433]. Defense counsel moved for a judgment of acquittal arguing that the state had failed to present evidence of premeditated murder and failed to prove beyond a reasonable doubt that Petitioner did not act in self-defense. In denying the motion, the court stated, "I think the credible testimony before the court right now is that there were no needle marks on the defendant's arm." [T. 1437]. Petitioner argues that defense counsel should have objected to this statement.

Counsel's failure to object did not constitute deficient performance or prejudice because even assuming the trial court's comment would have constituted improper bolstering, the court did not make the comment in the jury's presence. It cannot be said that but for counsel's failure to object, the outcome at trial would have been different. The jury was unaware of this statement during deliberations.

Under **claim 1k**, Petitioner alleges ineffective assistance of counsel for failing to move for a jury inquiry after hearing the victim's family talking to members of the jury during recess. [ECF 1, p. 7-9].

Petitioner does not refer to any evidence in the record in support of her claim. Her counsel during the Rule 3.850 proceedings explained the background information as follows. [ECF 10-1, p. 254]. During a recess on January 6, 1999, Petitioner observed a juror say to the victim's mother that she was sorry for their loss. The victim's mother responded, but Petitioner did not hear what she said. Defense counsel brought it to the judge's attention, who conducted an off-the-record inquiry with the jurors. The court did not dismiss the juror. Petitioner's post-conviction counsel conceded that the record did not contain any evidence of this incident. (*Id.*].

Even assuming the facts outlined in Petitioner's Rule 3.850 motion are true, defense counsel did in fact request that the court question the juror regarding any conversations with the victim's mother. Counsel did, in fact, do what Petitioner is alleging counsel failed to do. As a result, Petitioner cannot establish deficient performance or prejudice.

In light of the foregoing analysis, the trial court's determination that Petitioner was not entitled to postconviction relief on the ineffective assistance of counsel

claims raised under claim 1, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. § 2254(d). *Williams v. Taylor, supra*.

### Claim 2

Under claim 2, Petitioner alleges ineffective assistance of counsel in failing to conduct an adequate pre-trial investigation. This allegation can be separated into groups of sub-claims: failure to test physical evidence (2a, 2b, 2f) and failure to interview/call witnesses (2c, 2d, 2e). [ECF 1, p. 11-13].

### Physical Evidence

Petitioner takes issue with counsel's failure to test the murder weapon for the victim's fingerprints (**2a**) and failure to conduct DNA testing of the blood splatter on the bathroom wall (**2b**) and on Petitioner's shorts (**2f**). Petitioner argues that the victim's fingerprints on the weapon would have bolstered her self-defense argument, that evidence that the blood on the bathroom wall belonged to the victim would have shown the victim was using drugs intravenously on the night in question, and that evidence that the blood on Petitioner's shorts belonged to Petitioner would have established that the victim poked Petitioner with a syringe.

Defense counsel's decisions in connection with these three issues constitute strategic decisions. It is well settled that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Patton v. State*, 878 So. 2d 368, 373 (Fla. 2004) (*quoting Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91.

Counsel's failure to test the firearm for the victim's fingerprints constitutes a reasonable strategic decision which should not be disturbed. Petitioner's version of events was that the victim poked her with a syringe containing the HIV virus and Petitioner responded by shooting at the victim in self-defense. Petitioner did not allege that the victim tried to grab the gun. As a result, there was no need to test the firearm for fingerprints.

While evidence that the victim was shooting up in the bathroom and that Petitioner's own blood was on her shorts may have slightly bolstered Petitioner's version of events, defense counsel's failure to present such evidence did not result in prejudice under *Strickland*, in light of the strength of the state's case.

**Witnesses**

Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by naming the witness, demonstrating the witness was available to testify and would have done so, setting out the content of the witness' proposed testimony, and showing the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). *See also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding federal habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*) *cert. den'd*, 135 S. Ct. 1563 (2015).

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). Of course, a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

Even assuming counsel was deficient for failing to investigate and then call these purported witnesses to testify at trial, Petitioner is not entitled to relief on the

claims as she has not demonstrated here that, but for counsel's purported deficiency, the outcome of trial would have been different, resulting in an acquittal.

Petitioner asserts under claim **2c** that defense counsel should have spoken with the victim's girlfriend, "**Christine**," who spoke with the victim shortly before the shooting. Christine would have testified to the victim's state of mind. Petitioner again fails to establish prejudice because the victim's state of mind was not at issue. Furthermore, in her Rule 3.850 motion and her § 2254 petition, Petitioner failed to provide Christine's full name or allege that she was available to testify at trial.

Petitioner argues under claim **2d** that a neighbor, **Richard Wallice**, would have testified that he observed marks on Kimberly Butts's arm. Even assuming he did provide this testimony, it would not have altered the outcome because Butts conceded at trial that she did in fact have marks on her arm, which she got when scraping her arm on a bamboo fence.

Petitioner alleges under claim **2e** that counsel failed to interview and/or call as a witness, **Cheryl Sloan**. Petitioner does not provide the substance of Sloan's potential testimony or whether she was available to testify.

Petitioner's proffer regarding these witnesses does not alter the outcome of the proceedings, given the evidence adduced at trial. *See Fugate v. Head*, 261 F.3d 1206, 1239 n.54 (11th Cir. 2001) (fact that other witnesses could have been called

proves only that shortcomings of trial counsel can be identified, while shortcomings can be identified, perfection is not the standard of effective assistance). The evidence admitted at trial, was more than sufficient to sustain the convictions. *See Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, even if counsel's performance could in any way be deemed deficient for failing to call these witnesses, Petitioner suffered no prejudice as a result of the alleged deficiency. Therefore, the state court's denial of the claim was not contrary to applicable federal constitutional principles. Consequently, the rejection of the claim should not be disturbed here. *Williams v. Taylor, supra*.

### Claim 3

Under claim 3, Petitioner alleges ineffective assistance of trial counsel for failing to object to over fifty instances of prosecutorial misconduct. [ECF 1, p. 14-19]. In each sub-claim, Petitioner accuses the prosecutor of making an improper comment in closing or on cross-examination and then cites a page from the trial transcript. Petitioner does not provide any further basis for her allegations or cite any case law in support.

As a preliminary matter, Petitioner already challenged under claims 1 and 2 several of the comments at issue under claim 3. Specifically, under claim **31**, Petitioner takes issue with the prosecutor's references to her prior drug use, which

this Court addressed in detail under claim 1a through 1f. As she challenged under claim 1i, Petitioner again challenges the prosecutor's references to her softened appearance at trial, her homosexuality, and her general toughness at the time of the crime (claims **3f, 3g, 3h, 3i, 3j, 3m, 3ff,** and **3gg**). For the reasons put forth above, counsel was not ineffective in failing to object to these comments.

### Law Applicable to Claim 3

Petitioner primarily challenges comments made by the prosecutor during the state's cross-examination and closing arguments. The following standards of law apply.

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Hall v. Wainwright*, 733 F.2d 766, 733 (11th Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial. *Hance v. Zant*, 696 F.2d 940 (11th Cir.), *cert. den'd*, 463 U.S. 1210 (1983). This "determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir.), *cert. den'd*, 485 U.S. 964 (1988).

The purpose of **closing argument** is to explain to the jury what it has to decide and what evidence is relevant to its decision. *See United States v. Iglesias*, 915 F.2d 1524, 1529 (11 Cir. 1990). The jury's decision must be based upon the evidence presented at trial and the legal instructions given by the court. *See Chandler v. Florida*, 449 U.S. 560, 574 (1981) ("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). *See also Ward v. State*, 765 So. 2d 299, 300 (Fla. 5th DCA 2000) ("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); *Laboo v. State*, 715 So. 2d 1034, 1035 (Fla. 1st DCA 1998) (prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

Thus, argument urging the jury to decide the matter based upon factors other than those it is instructed to consider is improper. The Courts have, therefore, condemned argument that is inflammatory or appeals to bias or prejudice. *United States v. Childress*, 58 F.3d 693, 715 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996) ("It is well established that a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence."). Further, it is beyond dispute that an expression by the prosecutor of his or her own belief in the defendant's guilt is improper. *See Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. De Christoforo*, 416 U.S. 637 (1974)).

On **cross-examination**, the prosecutor can "delve further into issues raised during the direct examination" and "impeach a witness's credibility." *Butler v. State*, 842 So. 2d 817, 824-25 (Fla. 2003) (citing *Steinhorst v. State*, 412 So. 2d 332, 337 (Fla. 1982); *Diaz v. State*, 747 So. 2d 1021, 1023 (Fla. 3d DCA 1999)). Furthermore, the prosecutor's cross-examination "is not limited to the exact details testified to on direct examination but extends to the whole subject and all matters that modify, supplement, contradict, rebut or make clearer the direct testimony." *Id.* at 825 (citing *Chandler v. State*, 702 So. 2d 186 (Fla. 1997); *Geralds v. State*, 674 So. 2d 96 (Fla. 1996)). *See also* Fla. Stat. § 90.608 (regarding proper witness impeachment).

### Discussion of Prosecutor's Comments

Under claims **3a** and **3zz**, Petitioner argues that when making his opening statement, the prosecutor lied about the facts which would be introduced. [ECF 1, p. 14,17] [citing T.625]. Petitioner takes issue with comments on page 625, however, this includes an objection by defense counsel to a comment made by the prosecutor during the opening statement. As a result, Petitioner cannot establish deficient performance where counsel did, in fact, lodge an objection. [T. 625].

Under claims **3b, 3e, 3s, 3t, 3aa, 3bb, 3kk, 3pp, 3qq**, and **3tt**, Petitioner

35

argues that the prosecutor improperly accused her of lying.

Under claims **3b** and **3e**, Petitioner takes issue with the state's cross-examination of Petitioner. [ECF 1, p. 14] [citing T. 1545-46, 1579-80, 1670-1671]. She alleges that the prosecutor ridiculed her understanding of being placed under oath. However, review of these excerpts reveals that the prosecutor was merely inquiring into whether Petitioner understood that when she gave a statement under oath she was supposed to speak the truth. The prosecutor also pointed out that Petitioner changed her story regarding her drug use. These questions constitute appropriate cross-examination of a defendant. *See* Fla. Stat. § 90.608(1) (a party's credibility may be attacked on cross-examination by prior inconsistent statements).

Under claims **3s, 3t, 3aa, 3bb, 3kk, 3pp, 3qq**, and **3tt**, Petitioner alleges that the prosecutor improperly referred to her as a liar during closing. [ECF 1, p. 15-16]. [citing T. 1888-89, 1902-03, 2027, 2034-37, 2039-40].

In a case which issued shortly before Petitioner's trial, the Florida Supreme Court addressed whether the prosecutor improperly referred to statements in the defendant's taped confession as "bald-faced lies." *Davis v. State*, 698 So. 2d 1182, 1190 (Fla. 1997). In concluding that the comments were proper, the court noted, "When it is understood from the context of the argument that the charge is made with reference to the evidence, the prosecutor is merely submitting to the jury a

conclusion that he or she is arguing can be drawn from the evidence." *Id.* [citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987).

Similarly in Petitioner's case, the prosecutor was commenting on the veracity of Petitioner's confession to police and Petitioner's testimony at trial. In so doing, the prosecutor was merely reaching a conclusion which could arguably be drawn from the evidence. The comments were not improper. *See Davis, supra.*

Under claim **3c**, Petitioner argues that counsel failed to object when the prosecutor prevented her from answering questions by interrupting her during cross-examination. [ECF 1, p. 14] [citing T. 1539, 1550, 1567, 1576-77, 1595].

Upon reviewing each page referenced by Petitioner, the Undersigned finds no basis for a defense objection. On page 1539, Petitioner could not see a visual display in the courtroom.

**Prosecutor**: You tell me how far. Right there (indicating)?

**Petitioner**: I can't really tell from here. I'm looking across this way. If I was looking at the chairs frontways - -

**Prosecutor**: Sure, we can do that. Why don't you look at it this way? About that distance?

**Petitioner**: Maybe a little farther.

[T. 1539]. Petitioner next takes issue with the following exchange:

**Prosecutor**: You were still extremely fearful of [the victim], right?

37

**Petitioner**: If I can explain it, I would tell you that - -

**Prosecutor**: What I would like you to do, Ms. Sysyn, is answer the question that I ask you.

**Petitioner**: Okay. What was the question?

[T. 1550].

On page 1667, defense counsel did in fact bring to the court's attention that

the prosecutor interrupted Petitioner's answer.

**Prosecutor**: Remember telling the police as they were in the middle of the context of talking about what happened in the car and you said maybe there were   other alternatives?" Remember saying that under oath - -

**Petitioner**: Yes, but I said that after the fact, and like I just - -

**Prosecutor**: - - after you shot [the victim]?

**Defense Counsel**: Judge, might the witness be able to answer?

**The Court**: I couldn't hear, I'm sorry.

**Defense Counsel**: The prosecutor began another question before she was finished.

**The Court**: Were you finished answering the question?

**Petitioner**: No. I said that I had stated that after the fact, that yes, maybe at that point looking back I wanted there to have been something else to be done, but at the second when the incident was happening in the car, there was no time for me to sit there and think about what my alternatives were.

[T. 1566-67].

Petitioner next takes issue with the following:

**Prosecutor**: So you told the police that you were the owner of the vehicle?

**Petitioner**: Yes.

**Prosecutor**: You just didn't tell them that you were the driver of the vehicle?

**Petitioner**: I'm not sure they asked me that. They asked me if I owned the vehicle, and I told them, yes. I actually don't - -

**Prosecutor**: Ms. Sysyn.

**Petitioner**: What?

**Prosecutor**: Did you or did you not ever tell the police that you were the driver?

**Petitioner**: That I was not the driver?

**Prosecutor**: Do you understand my questions to you?

**Petitioner**: No, I don't.

**Prosecutor**: I will rephrase them for you.

[T. 1576-77]. Lastly, Petitioner cites to the following portion of the transcript:

**Prosecutor**: And all the way until you got home, you didn't have any problems driving that car, right?

**Petitioner**: Not that I recall. I - -

**Prosecutor**: And you weren't buzzed, to use your words, at the time

39

that you were in the car with [the victim], right?

**Petitioner**: I didn't feel that I was. Obviously if I had been smoking cocaine, I was not sober either.

[T. 1595].

It appears that Petitioner simply reviewed the transcript of the prosecutor's cross-examination and cited any page where Petitioner's answer ended with two dashes, indicating that she was not finished with her answer. On the substance of these exchanges, defense counsel had no reason to object. In one instance, counsel did in fact object to the prosecutor's interruption, at which point, Petitioner was able to give a lengthy answer. Petitioner has not established deficient performance or prejudice in connection with defense counsel's alleged failure to object during the exchanges provided above. The prosecutor was simply engaging in proper cross-examination of Petitioner. *See Butler*, 842 So. 2d at 825 (citing *Chandler*, 702 So. 2d 186; *Geralds*, 674 So. 2d 96).

Under claim **3d**, Petitioner alleges that on three occasions, the prosecutor improperly asked Petitioner to vouch for the credibility of other witnesses. [ECF 1, p. 14] [citing T. 1574-75, 1578-79, 1613]. In all three instances, defense counsel objected to the prosecutor's question. As a result, Petitioner cannot establish deficient performance where defense counsel did in fact object. Her claim is refuted

by the record.

Under claim 3k, Petitioner alleges that the prosecutor improperly suggested that defense counsel attempted to influence Petitioner's testimony during a break. [ECF 1, p. 14] [citing T 1609-10]. The following took place:

> Prosecutor: Now, during the break, during your direct examination, we took a break. Do you remember that?
>
> Petitioner: Yes.
>
> Prosecutor: And during the break in your testimony, you spoke to your attorney, didn't you?
>
> Defense Counsel: Judge, objection.
>
> The Court: Sustained.

[T. 1609-10]. Defense counsel did object. As a result, Petitioner's argument that counsel's performance was deficient is refuted by the record.

Under claim **3n**, Petitioner alleges that the prosecutor improperly cross-examined her about her refusal to allow the police to conduct a search of her entire house. [ECF 1, p. 15] [citing T. 1615-19].

During her first sworn statement to the police, Petitioner asserted that she wanted the police to "only" search her bedroom. [T. 1617]. During her second sworn statement to the police, Petitioner told them to search her bedroom to retrieve the shirt she was wearing. [T. 1618-19]. During cross-examination, Petitioner suggested

that she did not have a problem with the police searching her entire house. [T. 1616].

At this point, the prosecutor properly impeached Petitioner with her prior inconsistent sworn statement to the police. *See* Fla. Stat. § 90.608(1). Because defense counsel had no basis to object to the prosecutor's impeachment, Petitioner cannot establish deficient performance under *Strickland*. *See Palmes v. Wainwright*, *supra*.

Under claims **3o**, **3dd**, **3mm**, and **3vv**, Petitioner alleges that when cross examining defense witness Sandra Smith [T. 1648-60] and in closing [T. 1907-08, 2033, 2040-41] the prosecutor improperly accused defense counsel of attempting to influence defense witnesses. [ECF 1, p. 16-17].

During the prosecutor's cross-examination of Sandra Smith, the prosecutor engaged in the following line of questioning:

> **Prosecutor**: Now, in addition to talking to the defendant when you were visiting her, you had also met at some point with the defense attorney prior to today, right?
>
> **Ms. Smith**: Met with him, yes.
>
> **Prosecutor**: And you know there's nothing improper about talking to a lawyer outside of court, right?
>
> **Ms. Smith**: That's correct.
>
> **Prosecutor**: Now, . . . the defense attorney is the person you met with, right?

**Ms. Smith**: Yes.

**Prosecutor**: And he volunteered -- in discussions with you in the two times that you met with him, today and one other time, he volunteered to you some facts about the shooting, didn't he?

**Defense Counsel**: Judge, **I would object** as outside the scope of direct examination. This witness's testimony has been limited to reputation.

**The Court**: Overruled.

. . .

**Prosecutor**: You had an opportunity to meet with the defense attorney on two occasions, once today and once prior to today, right?

. . .

**Ms. Smith**: Yes.

**Prosecutor**: And during that meeting or those meetings on one of those occasions . . . the defense attorney, shared some information with you about the shooting, right?

**Ms. Smith**: Yes, right.

**Prosecutor**: This was information that you had not had until [defense counsel] talked to you about it, right?

**Ms. Smith**: Correct.

**Prosecutor**: He gave you some facts, his version of the facts about the shooting, about what happened, right?

**Ms. Smith**: Yes, under the guidance of clergyship, yes.

**Prosecutor**: However he was guided, the facts that he told you about the shooting you did not know prior to taking the deposition and testifying here today, right?

**Ms. Smith**: I didn't know many facts.

**Prosecutor**: Right. And the facts that . . . the defense attorney told you about the shooting, you were unaware of before you came in here today, right?

**Ms. Smith**: Right, but I would like to clarify one thing.

**Prosecutor**: Ma'am, if you could hold on one second, I have another question for you. Now, based on information that [defense counsel] told you by the way, he gave you some specific information about a gunshot going into the floor of the car, right?

**Ms. Smith**: Correct.

**Prosecutor**: And he gave you some information in addition to that about what happened at that shooting, right?

**Ms. Smith**: No.

**Prosecutor**: He gave you no other information other than one fact about a gunshot going into the floorboard of the car?

**Defense Counsel**: **I would object** to the state making me a witness in this case.

**Prosecutor**: Absolutely, it goes to the credibility.

**The Court**: I don't think he's making you a witness.

**Defense Counsel**: I hope I don't have to respond, Judge.

**The Court**: Well, you certainly can have redirect examination on it.

**Defense Counsel**: But I can't testify, Your Honor.

**Prosecutor**: Judge, I'll put [defense counsel] on the stand if that's what he's asking.

**Defense Counsel**: I volunteer.

44

**The Court**: Counsel, no attorney in this case is going to be testifying. You don't have to worry about that. Ask your question. I have overruled the objection.

[T. 1648-51] (emphasis added).

**Prosecutor**: After you spoke to [defense counsel] and you spoke to the defendant, you formed an opinion that this shooting was an accident, right?

**Defense Counsel**: Judge, **again objecting** to the opinion of this witness as to what happened here.

**Prosecutor**: Her beliefs have a lot to do with how she testifies. It is credibility of the witness.

**The Court**: Overruled.

[T. 1652-53] (emphasis added).

**Prosecutor**: [Defense counsel] never told you that the defendant, Sandra Sysyn, threatened to kill [the victim] earlier in the evening?

**Defense Counsel**: **Objection**. How far are we going to go in terms of a conversation I may have had?

**Prosecutor**: I want to show the jury that there were several comments made in that conversation and that had an effect on –

**Defense Counsel**: How do I respond without testifying? How do I respond without testifying?

**The Court**: Come on up.

[Thereupon, the following was heard sidebar).

**Prosecutor**: Judge, I'm having a problem here. I'm being interfered

45

with my ability to cross-examine a witness through speeches the defense counsel is making in the courtroom. The credibility of the—

**The Court**: I thought I asked both of you not to make speeches in the courtroom.

**Defense Counsel**: I apologize, Judge.

**The Court**: [Defense counsel], we discussed in the very beginning of this case, you were going to be an advocate and the attorney of record for your client, not a witness.

**Defense Counsel**: I understand.

**The Court**: However, you put somebody on the stand to discuss reputation of [the victim] for violence, and I think that the prosecutor has the right at this time to test the credibility of the witness based upon what factors she considered, whether it was a discussion with you or anyone else in the community. That doesn't make you a witness.

**Defense Counsel**: It's not improper to talk to a witness outside of court.

**The Court**: Nobody is questioning that. I'm going to tell the jury that.

**Prosecutor**: I asked a question about that in front of the jury.

**The Court**: If you want, I will tell them right now that it's not improper to discuss.

**Prosecutor**: Here's the problem. To me there's a distinction between discussing a witness's testimony and providing them facts, and I'm going to make that a major issue on my closing. Excuse me, if I could finish. If the Court wants to read the entire instruction to the jury concerning talking to witnesses, I don't have a problem with that because I'm going to blow it up and show the jury that.

**The Court**: I'm going to give them that instruction at the close of the case. But at the present time, the defense, they put on a witness to show

that the victim had a propensity for violence and reputation in the community. I'm going to allow cross-examination as to where she obtained that opinion from.

**Defense Counsel**: Judge, I can proffer to the Court that no facts that I discussed with her about the facts of the case had anything to do with her testimony.

**Prosecutor**: I don't believe that. We have a difference of opinion, and that's for the fact finder.

**The Court**: Nevertheless, I think it's reasonable that the witness would be asked questions as to how she came to that conclusion. That's all. This is not new law based upon some recent decision. This goes back since the evidence laws, you know, became -- I hate to talk and not finish, since the evidence laws were first thought of. Okay. Anything further? I hope this witness isn't trying to catch a plane also.

**Defense Counsel**: Yes.

**Prosecutor**: I only have a few more minutes, Judge.

**The Court**: I'm sorry about that. It looks like they will be here tonight.

**Defense Counsel**: I would respectfully disagree with the Court's ruling and **request a mistrial** that I have to respond to the insinuation of the prosecutor.

**Prosecutor**: He put himself in the witness's mind by providing facts.

**The Court**: Clearly I would not permit any discussion whatsoever between you and your client, but if you had a discussion with a witness, that may or may not have changed their opinion of the case. She's giving opinion testimony.

**Defense Counsel**: Isn't that true every time a prosecutor prepares a witness for testimony?

**The Court**: Sure, they are, and this witness is open to redirect also. Your motion for mistrial is denied.

**Defense Counsel**: Yes, sir.

[Thereupon, the following was heard in open court).

[T. 1653-59] (emphasis added).

The above excerpts from the prosecutor's cross-examination show that defense counsel objected multiple times and even went so far as moving for a mistrial. As a result, Petitioner's claim of deficient performance is clearly refuted by the record.

The prosecutor asserted in closing:

It's important to know that when the defense attorney talks to a witness outside, and the Judge is going to read you the law, he's going to tell you that it's entirely proper for an attorney to speak to witnesses about their testimony.

Now, I'm not suggesting that [defense counsel] told a witness how to testify or told a witness to lie or not tell the truth. He's a very experienced, polished professional, but he's not a magician. He can't pull a rabbit out of a hat, and he can't go poof and make evidence appear or disappear.

He didn't just talk to a witness outside about her testimony. Listen for those words when the Judge reads you the instruction. He told her additional information, information that he selected on what he was going to give her and no other information. And I suggest to you that has an impact on how a witness testifies. And you all know that, and you have to consider that in the testimony of all the defense witnesses.

[T. 1907-08]. In the prosecutor's rebuttal, he referred to "talking to a witness out in

the hallway at some other hearing and telling them evidence that only the defense attorney wants to give in the light that he thinks is important." [T. 2033]. The prosecutor also stated in rebuttal, with respect to the defense witnesses,

> All people that are either friendly, good friends with the defendant before she was arrested or became real good friends with her afterwards, after she's arrested with a little bit of help from the defense attorney feeding certain information to one particular witness.

[T. 2040-41].

The above comments were in reference to proper impeachment conducted by the prosecutor when cross-examining defense witnesses Sandra Smith. [T. 1648] Furthermore, the prosecutor stressed that he was not accusing the defense counsel of improperly directing defense witnesses to lie. [T. 1908]. As a result, defense counsel had no basis to object. *See Palmes v. Wainwright*, *supra*.

Under claim **3p**, Petitioner takes issue with the prosecutor's reference to Petitioner's indigence. [ECF 1, p. 15] [citing T. 1780-81]. Towards the end of direct examination, defense counsel elicited from Petitioner that DNA testing was expensive. [T. 1779]. The prosecutor's cross-examination began with the following:

> **Prosecutor**: Let's talk about expense. You just indicated to this jury that [defense counsel] belongs to the Public Defender's Office in Broward County, right?
>
> **Petitioner**: That's my understanding.
>
> **Prosecutor**: And you did that based on a question he just asked you?

**Petitioner**: Yes.

**Prosecutor**: And that means that he is her attorney because she can't afford another attorney, right?

**The Court**: Well, ladies and gentlemen, that's totally - -

**Prosecutor**: I will ask another question.

**The Court**: Let me advise the jury that every person charged with an offense in this state is entitled to have an attorney. I don't want to get into that issue. Okay.

**Prosecutor**: You just told the jury that these tests were expensive. I want to make sure the jury understands, if a person who is on trial for any crime, whether it be DUI or first-degree murder, if they need a test performed in a case, especially a murder case and it's expensive, they can get that test done if they request the Court and have a hearing and that motion is granted, can't they?

**Defense counsel**: Objection . . . that's outside of the scope of the purview of this witness.

[T. 1780-81].

Petitioner cannot establish prejudice because the trial court took issue *sua sponte* with the prosecutor's line of questioning and immediately gave a curative instruction to the jury. Furthermore, Petitioner cannot establish deficient performance because defense counsel lodged an objection.

Under claims **3q** and **3oo**, Petitioner alleges that during closing argument, the prosecutor improperly stated that police officers do not lie on the stand. [ECF 1, p.

15-16][citing T. 1886-87, 2034-35]. Petitioner takes issue with the following:

> She washes off the blood and changes her shirt. Then she says, I'm the owner but not the driver. Now, the defendant took the stand, and she told you, well, I didn't say that.
>
> That is where you come in. You are going to have to decide who is telling the truth here. Is the police officer, who came in here . . . who told you under oath who has nothing to gain or lose how diverted this case is? This is one more case he's worked on. He says, the defendant says I'm the owner but not the driver.
>
> I suggest to you that he told you the truth.

[T. 1886-87].

> For you to believe, for you to believe that there was a needle mark in the defendant's arm, there's really only a black and white issue here, then you have to believe that two detectives who go from one murder case to the next would have such a vested interest in how this case is decided, that they both looked at her arms and came in here to you and they lied. Either they lied, two detectives, or she's lying to you. She's lying to you.

[T. 2034-35].

The issue of credibility of both state and defense witnesses was indeed central to the case here, and the prosecutor's remarks were proper as a response to the defense's position that Petitioner's version of events was credible. In fact, the state properly argued that the evidence supported the state's theory and urged the jury to believe the state witnesses' testimony, and to find the testimony of the defense witness and Petitioner's theory of defense incredible. *See e.g., United States v.*

*Granville*, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two government witnesses, only pointed to matters in evidence, the demeanor of one witness and testimony of support witnesses, as well as a tape-recording corroborating the testimony of another); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1983) (noting that the State may present its "contention as to the conclusions the jury should draw from the evidence"). *See also Davis v. Singletary*, 853 F. Supp. 1492, 1560 (M.D. Fla. 1994), *aff'd*, 119 F.3d 1471 (1997), *cert*. *denied*, 523 U.S. 1141(1998) (finding that "[i]n response to an attack on the government and the conduct of its case, a prosecutor may present what even amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon the government or its witnesses.") (citation omitted). Because the comments were not improper, Petitioner cannot establish that counsel was ineffective in failing to raise a meritless objection. *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir. 1984) ("Trial counsel certainly cannot be deemed to have been ineffective for failing to raise [a] tenuous objection.").

Under claim **3r**, Petitioner takes issue with the prosecutor's "rude" behavior. [ECF 1, p. 15] [citing T. 1829-30]. The prosecutor cross-examined Petitioner's mother as follows:

**Prosecutor**: And you know what an oath is, correct?

**Witness**: I'm 60 years old, yes. Yes. Please don't treat me like a child. I'm trying to answer your questions.

**The Court**: Excuse me, ma'am. I'm going to tell you one more time. You are a subpoenaed witness in a case. When an attorney asks you a question, please respond to the question. You don't have to argue with him. Just respond to the question that's asked. Okay. Please just listen to the question and answer the question. Okay. Let's be calm.

**Witness**: Okay.

[T. 1828-30]. There was no basis in the above exchange for defense counsel to object. *See Palmes v. Wainwright*, *supra*. The judge made clear that like the prosecutor, the judge was frustrated with the earlier failures of the witness to answer the prosecutor's questions. The judge would have likely sustained any defense objection to the prosecutor's alleged rudeness towards the witness.

Under claim **3u**, Petitioner alleges that the prosecutor improperly accused her of using her constitutional rights to avoid criminal responsibility. [ECF 1, p. 15] [citing T. 1889-90]. This argument is refuted by the record. The prosecutor stated the following during closing:

**Prosecutor**: She limits the search of the house. Now, you know what, she's entitled to do that. She has constitutional rights . . . if the police had gone in and searched and there was no consent and they didn't have probable cause, [defense counsel] would be in here screaming and yelling that her rights were violated, the police searched her house without consent and without probable cause.

> **Defense Counsel**: I object to the state hypothesizing what the defense would have done if the case were different.
>
> **The Court**: Overruled.
>
> **Prosecutor**: The detectives told you they had no evidence, none, that they had the right to draw up search warrants and get into the rest of the house. The murder occurred in the car, not in the house, and the only piece of evidence they are aware of that had to do with that murder was a shirt in the bedroom which they had consent to get. So she limits it.

[T. 1888-90].

Contrary to Petitioner's allegation, the prosecutor expressly stated that Petitioner had the constitutional right to limit the search and, further stated, that the police would not have been allowed to search the house because the shooting took place in the car. Furthermore, defense counsel's performance was not deficient where defense counsel did in fact object.

Under claim **3v**, Petitioner takes issue with the prosecutor's statement during closing argument that intoxication is not a defense to premeditated murder. [ECF 1, p. 15][citing T.1890-92]. Specifically, the prosecutor stated:

> What really happened here, you're going to find out that, as the defense counsel told you during jury selection, intoxication is not a defense in this case. It's not being argued as a defense, and the Judge isn't going to read you the law on this, so that's not an issue.

[T. 1890-91]. The prosecutor simply referred to defense counsel's comment during voir dire that Petitioner was not putting forth an intoxication defense. There was no

basis to object. *See Palmes v. Wainwright*, *supra*.

Under claim **3w**, Petitioner alleges that, during closing, the prosecutor shifted the burden to prove self-defense onto Petitioner. [ECF 1, p. 15][citing 1892-95]. Petitioner's claim is refuted by the record. The prosecutor first explained that the state had the burden of proving premeditated murder beyond a reasonable doubt, and then pointed out that defense counsel "has put on a case of self-defense, and we're going to talk about that as a separate issue in a moment." The prosecutor then went on to explain the elements of premeditated murder.

Contrary to Petitioner's assertion, the prosecutor did not mislead the jury as to the burden of proof and/or in any way shift the burden of proof to Petitioner, which is clearly improper under both federal and state law principles. *See e.g., Duncan v. Stynchcombe*, 704 F.2d 1213, 1215-16 (11th Cir. 1983);   *United States v. Downs*, 615 F.2d 677, 679 (5th Cir.1980); *Jackson v. State*, 575 So. 2d 181 (Fla. 1991) (when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof); *Northard v. State*, 675 So. 2d 652, 653 (Fla. 4th DCA 1996) (prosecutor's argument was impermissible because it asked the jury to determine who was lying as the proper test of determining guilt). The statement about which Petitioner complains was merely a statement of fact, Petitioner did put forth a case of self-defense. Defense counsel had no basis to object. *See Palmes v. Wainwright*,

*supra.*

Under claim **3x**, Petitioner alleges that the prosecutor improperly criticized defense counsel for lodging objections. [ECF 1, p. 15] [citing T. 1899]. The prosecutor stated during closing, "Remember I had her do this little thing in front of the jury, and we had **all kind of objections** and I had her sign her name. Remember I had her put her hand up." [T. 1899] (emphasis added). In so doing, the prosecutor merely referred to events which took place during the trial. Defense counsel had no basis to object. *See Palmes v. Wainwright*, *supra.*

Under claim **3y**, Petitioner alleges that the prosecutor improperly accused defense counsel of unfairly placing the victim on trial. [ECF 1, p. 15] [citing T. 1899].

> [The victim] isn't on trial here. The defense wants to put her on trial. They want to make the entire case about the victim and how bad and violent she's been in her life. Don't let them do it.

[T. 1899-1900]. Defense counsel called witnesses who testified to the fact that the victim was violent and aggressive. The prosecutor merely commented on the evidence put forth by defense counsel. This comment was not improper.

Under claim **3z**, Petitioner alleges that in closing the prosecutor improperly referred to the victim's inability to defend herself in court. [ECF 1, p. 15] [citing T. 1899-1900]. The prosecutor stated that the victim could not defend herself from

Petitioner's claim that the victim was a violent person. [T. 1899-1900]. Petitioner fails to explain how this comment was improper. A deceased victim was clearly unable to testify. Any objection would have been meritless. *See Palmes v. Wainwright*, *supra*.

Under claim **3cc**, Petitioner alleges that the prosecutor improperly argued in closing that Kimberly Butts attempted to fix her trial testimony to help Petitioner. [ECF 1, p. 16] [citing T. 1905-07]. The prosecutor asserted:

> I think I told you in opening Kimberly Butts, I don't know what she's going to say. And you know what, I didn't know what she was going to say because she said one thing to the police in her second statement when she volunteered information, and she said something different in her deposition.

[T. 1905]. The prosecutor continued: "I suggest to you, you already know why  . . . she was the lover of the defendant. They were close." [T. 1905].

The prosecutor was commenting on proper impeachment evidence which the prosecutor previously presented to the jury. *See* [T. 1034, 1048-49, 1064-65, 1073, 1109-12, 1143, 1614-15]. As a result, defense counsel had no basis on which to object. *See* Fla. Stat. § 90.608(1)&(2) (a party may impeach a witness with prior inconsistent statements or evidence showing the witness is biased).

Under claim **3ee**, Petitioner alleges that in closing the prosecutor accused defense counsel of grasping at straws by placing Petitioner's mother on the stand.

[ECF 1, p. 16] [citing T. 1911]. The prosecutor stated:

> No evidence anywhere in that car that there was any needle with a syringe, nothing, no needle or syringe found around where [the victim's] body was. You have the defense **grasping at straws**. They put on the mother of the defendant to say that she came to the house not knowing how many people had come in and out of the house, not knowing the date she put a lock on the door, not knowing how this crime scene has been changed, about needles, her daughter was an IV drug user, had tattoos and needles injected into her for all kinds of things.

[T. 1910-11] (emphasis added). The comment about which Petitioner complains was a proper comment on the evidence presented at trial. Defense counsel had no basis on which to object. *See Palmes v. Wainwright*, *supra*.

Under claim **3hh**, Petitioner alleges that in closing the prosecutor improperly argued that a person with tattoos would not be afraid of needles. [ECF 1, p. 16] [citing T. 1911-12, 2047]. Petitioner takes issue with the following statements by the prosecutor:

> Here is a woman who is an IV drug user who possibly received AIDS or hepatitis on numerous occasions from IV drug use, from tattooing, from body piercing, and she's going to tell you she's extremely fearful of these needles, that the defendant was going to stab her, that [the victim] was going to stab her.

[T. 1911].

> The victim supposedly has AIDS. The defendant is so fearful of this AIDS she's an IV drug user at one point in her life. For God's sake, she's getting tattoos all over her body. She's getting body piercings, and she's an IV drug user, but she's got this extreme fear of AIDS.

58

> That's what she wants you to believe. It just doesn't match up. It's not corroborated by her actions. It's not corroborated by other physical evidence. It's not corroborated by the other testimony.

[T. 2047]. The prosecutor was again commenting on and drawing conclusions from the evidence. Any objection from defense counsel would have been overruled as meritless.

Under claim **3ii**, Petitioner alleges that in closing the prosecutor improperly argued that Petitioner's failure to ask for an AIDS test in jail proved she was not afraid that she had contracted the disease from the victim. [ECF 1, p. 16] [citing T. 1912-15]. *See Palmes v. Wainwright*, *supra*.

Petitioner cannot establish deficient performance because defense counsel objected and moved for mistrial. [T. 1915]. After an extended argument between the parties, outside the presence of the jury, the court agreed to allow defense counsel to explain to the jury that Petitioner's failure to ask for an AIDS test immediately following her arrest was not necessarily relevant because the incubation period can last several months. [T. 1947-48]. Petitioner's argument that defense counsel's performance was deficient is refuted by the record.

Under claims **3jj, 3pp,** and **3ww**, Petitioner alleges that in closing the prosecutor improperly argued that defense counsel "fabricated" a defense. [ECF 1, p. 16-17] [citing T. 2024-27, 2034, 2046].

During defense counsel's closing, he referred to photographs of needles which were found in Petitioner's house in support of Petitioner's testimony "that needles were being used in her home before [the] incident." [T. 1990]. Defense counsel went on to say:

> I'm glad we found [the needles] because certainly the prosecutor would be up here screaming that that's a complete **fabrication**, there were no needles there, even [the victim] wasn't an intravenous drug user. If we, [the jury], didn't hear from numerous witnesses that [the victim] was, maybe we would believe [the prosecutor]. Physical evidence, crucial.

[T. 1991] (emphasis added).

> The prosecutor stated in rebuttal
>
> The defense in this case used some words . . . used the term fabricated defense . . and he said don't be misled. I had to write them down while he said them. Fabricated defense, don't be misled.

[T. 2024]. Because defense counsel invited the prosecutor's comment, defense counsel had no legal basis to object. *See Ferguson v. State*, 417 So. 2d 639, 642 (Fla. 1982) (prosecutor's comment in rebuttal to a theory presented by the defense during closing was proper); *Pope v. State*, 441 So. 2d 1073, 1076 (Fla. 1983) ("A party may not invite error and then be heard to complain of that error on appeal").

The prosecutor further stated that because Petitioner was claiming self-defense, her credibility was crucial to the defense's case. [T. 2025]. As a result, the physical evidence was not relevant to her specific defense. According to the

prosecutor, even if the victim was using needles at the house, the jury would still have to decide whether Petitioner's claim that the victim stuck her with a needle in the car was truthful. The prosecutor took the position that Petitioner's testimony was not credible. Consistent with this position, the prosecutor later stated:

> We are back to this, because this is all a fabrication, all of the physical evidence in this case, because this physical evidence doesn't have any value. It has nothing to do with the case. It wasn't found in the vehicle where the murder occurred.

[T.2033-34]. The prosecutor was accurately stating the law and commenting on the defense evidence. Thus, defense counsel did not provide ineffective assistance in failing to object to any of the prosecutor's "fabrication" comments.

Under claim **3ll**, Petitioner alleges that in closing the prosecutor improperly accused defense counsel of mischaracterizing the evidence. [ECF 1, p. 16] [citing T. 2028-31]. The prosecutor put forth several arguments on the pages cited by Petitioner. First, the prosecutor argued it was unlikely that the victim brought a needle in the car without a syringe, as police did not find a syringe in the car or near the victim's body. [T. 2028]. Next, the prosecutor challenged defense counsel's argument that the angle of the bullet holes did not support the state's case. [T. 2029-30]. Lastly, the prosecutor implied that the evidence on which the defense relied was a "red herring" to distract the jury. [T. 2031].   Review of these pages refutes any

claim by Petitioner that defense counsel should have objected. The prosecutor was responding to the evidence presented by the defense and the arguments put forth by defense counsel in closing. These comments were proper under Florida law. *See Ferguson*, 417 So. 2d at 642. Defense counsel's failure to lodge a meritless objection was not ineffective assistance of counsel. *See Palmes v. Wainwright*, *supra*.

Under claim **3nn**, Petitioner alleges that in closing the prosecutor improperly argued that defense counsel should have pursued blood testing. [ECF 1, p. 16][citing T. 2033-34]. The prosecutor stated:

> We are back to this, because this is all a fabrication, all of the physical evidence in this case, because this physical evidence doesn't have any value. It has nothing to do with this case. It wasn't found in the vehicle where the murder occurred. On the wall, which looks like blood, we don't know whose blood it was.

> The defense could have helped us out with that. They have no obligation to put on any evidence in this case. It's the state's burden of proof. But when they come in here and they tell you that this shows that the victim was using drugs, no, they held the key to that, they could have had it tested. They didn't.

[T. 2033-34]. Here, the prosecutor's statement that defense counsel should have introduced blood testing results arguably did constitute a comment improperly shifting the burden on to the defendant. *See Jackson v. State*, 575 So.2d 181 (Fla. 1991) (when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof). However, the prosecutor promptly informed the jury

that the state had the burden of proof and the defendant had no obligation to present evidence in the case. As a result, defense counsel's failure to object did not constitute ineffective assistance.

Under claim Under claim **3rr**, Petitioner alleges that in closing the prosecutor improperly argued that defense counsel's presentation was a "joke." [ECF 1, p. 17] [citing T. 2037-38]. The prosecutor stated:

> Defense attorney gets up here and starts yelling and screaming and screaming too much. First he says I'm yelling. Sometimes I do yell and scream too much. You are not going to come back with a verdict in this case or any verdict because I jump up and down and yell and scream. That's silly to suggest that.
>
> It's silly to suggest when defense attorney gets up here and starts screaming and yelling, [Petitioner] was speeding from the scene of the murder, **that is a joke**. **That's a joke**. I don't even know the words to describe that except for the fact that when that occurs, that should tell you something about the strength of this case.
>
> When the defense attorney has to talk to you and jump up and down and start screaming that his client was speeding, I suggest to you when we're talking about weight of evidence, the weight is overwhelming that this is a premeditated murder.

[T. 2037-38] (emphasis added). Nothing about the above comment constituted prosecutorial misconduct. It appears the prosecutor was merely commenting on defense counsel's style of "yelling and screaming" when presenting the defense. There was no basis on which to object.

Under claim **3ss**, Petitioner alleges that in closing the prosecutor improperly

compared Petitioner's case with hypothetical cases not before the jury. [ECF 1, p. 17] [citing T. 2038]. The prosecutor asserted:

> I can't give you a stronger premeditated murder case unless I had a 60 Minutes helicopter flying overhead, and I had a written plan done days or weeks before of the murder. And you all agreed you don't require that because the law doesn't require that type of premeditation. It doesn't get any stronger.

[T. 2038]. Petitioner's argument is refuted by the record as the prosecutor did not compare Petitioner's case with a hypothetical case not before the jury when making this comment.

Under claim **3uu**, Petitioner alleges that in closing the prosecutor improperly argued that defense counsel was trying to fool the jury. [ECF 1, p. 17] [citing T. 2040].

The prosecutor asserted:

> They did everything under the sun to change this trial around and make it a trial about [the victim], and it's not. It's not. Don't be misled. Don't be misled. You are the conscious of the community. You took the sworn oath to follow the law the Judge gives you in this case.

[T. 2040]. The above comment is simply a comment responding to the defense theory of the case. It is a proper comment on the defense evidence and argument. Defense counsel's failure to object did not constitute deficient performance. *See Palmes v. Wainwright*, *supra*.

Under claim **3xx**, Petitioner alleges that in closing the prosecutor improperly

argued that justice would only be served with a guilty verdict. [ECF 1, p. 17] [citing

T. 2048-50].

> It would be a travesty of justice for you to come back with a verdict of
> manslaughter or second degree murder when the evidence in this case
> clearly, clearly and overwhelmingly, shows you that there was plenty
> of time for her to decide . . .   This case is about justice. All the physical
> evidence in this case supports the fact that this was a premeditated
> murder.

[T. 2048]. In his final statements to the jury, the prosecutor argued:

> I suggest to you that the defendant is guilty of first-degree premeditated
> murder of the victim in this case . . . She's guilty as charged.

[T. 2049].

In *Whitfield v. State*, 479 So. 2d 208, 216 (Fla. 4th DCA 1985), the Fourth

DCA concluded that the prosecutor's comments that "the interest of the victims of

the crimes for which [the defendant was] on trial was an interest in justice" were not

improper. In *Johnson v. State*, the First DCA found no prosecutorial misconduct in

connection to the following prosecutorial comment: "in my judgment the evidence

in this case amply warrants and demands a verdict of guilty of murder in the first

degree, and I ask you to return a verdict of murder in the first degree against this

defendant." 499 So. 2d 921, 925 (Fla. 1st DCA 1984) (disapproved of on other

grounds in *State v. McFadden*, 772 So. 2d 1209 (Fla. 2000)).

Like the prosecutors in *Whitfield* and *Johnson*, the prosecutor in Petitioner's

case was presenting the state's argument that Petitioner was guilty of the crime. This argument was no secret to the jury and did not result in undue prejudice to Petitioner. As a result, defense counsel's failure to object did not constitute ineffective assistance.

Under claim **3yy**, Petitioner alleges that during voir dire the prosecutor improperly argued that "premeditate doesn't mean plan, necessarily." [ECF 1, p. 17] [citing T. 375].

> Premeditate doesn't mean plan necessarily. It means the desire and the will and they are going to act upon wanting this other person dead. They have enough time to consciously reflect about it. You are going to hear the full definition. Don't take the law from me.

[T. 375]. Even assuming the prosecutor misstated the law, the prosecutor immediately cured any problem by informing the members of the panel that they would subsequently hear an accurate recitation of the law. There was no reason to object.

### Concluding Analysis of Claim 3

After reviewing the record in its entirety, including the prosecution's closing argument, it is evident that the prosecutor's remarks were tied to a summary of the evidence presented at trial, inferences derived therefrom, and a discussion of the applicable law. When the prosecutor voices a personal opinion, but indicates this belief is based on evidence in the record, the comment does not require a new trial.

*See United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983). Here, in no way did the prosecutor present his personal opinion as to Petitioner's guilt and, even if such comments could be so interpreted by the jury, they were based upon evidence in the record.

Also, this court points out that any potential prejudice was diminished by the trial court's clear and correct instructions to the jury regarding the criminal offenses charged, the burden of proof, and the reliability of evidence. [T.2060-79]. The court further instructed the jury that it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. [T. 2072-75]. Finally, the court instructed the jury that argument by the lawyers was not evidence in the case. [T. 1881]. It is generally **presumed that jurors follow their instructions**. *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Thus, there is no reasonable probability that the result of the trial would have been different if the now challenged comments had not occurred.

It is also important to note that there is no indication whatever that the prosecutor made any or all of the subject comments in a deliberate attempt to distract the jury from the issue of Petitioner's guilt or mislead the jurors as to issues of guilt or innocence. However, even if this Court were to view the challenged comments as improper for any or all the reasons claimed, when taken together or separately, these

arguments did not so invade the province of the jury to render the trial fundamentally unfair, requiring a new trial. *See DeChristoforo*, 416 U.S. at 643 (improper prosecutorial comment not reversible error unless remarks "so infect the trial with unfairness as to make the resulting conviction a denial of due process"); *Strickland*, 466 U.S. at 695 (to find prejudice for purposes of ineffective assistance claim, court "must consider the totality of the evidence before the judge or jury").

Moreover, it would have been futile for trial counsel to object to the comments, or move for a mistrial based on the above-mentioned remarks by the prosecutor, given the "wide latitude" accorded counsel in making closing arguments. Florida law affords wide latitude to counsel in closing arguments. *See Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982).

Under the **totality of the circumstances**, including the strength of the evidence of Petitioner's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Accordingly, the state trial court's denial of claim 3 in the Rule 3.850 proceeding, which was then affirmed on appeal, did not constitute a decision that was contrary

to or an unreasonable application of federal constitutional law. Therefore, Petitioner is not entitled to habeas relief. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor, supra*.

**<u>Claim 4</u>**

Under claim 4, Petitioner alleges ineffective assistance of counsel for failing to object to a violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). [ECF 1, p. 21-23].

Here, Petitioner cannot demonstrate either a *Brady* or due process violation. In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a *Brady* violation must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. *LeCroy v. Fla. Dep't of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005); *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989). *See also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *United States v. Severdija*, 790 F.2d 1556, 1558 (11th Cir. 1986).

This duty also covers not only exculpatory material, but information that could be used to impeach a key prosecution witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Evidence is material "only if there is a reasonable probability

that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987) (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Alzate*, 47 F.3d 1103, 1109-1110 (11th Cir. 1995) (*quoting Bagley*, 473 U.S. at 682 (1985)).

On October 17, 1997, the state filed a motion to obtain a blood sample from Petitioner, arguing that it was necessary to compare it with the blood samples recovered from the scene of the homicide. [ECF 1, p. 21]. The trial court granted the state's motion. Ultimately, the state did not introduce at trial any evidence collected by the state as a result of the court order granting its motion to obtain a blood sample.

Petitioner argues that evidence of her blood in the car would have supported her defense that the victim stabbed her with a needle and, therefore, constituted exculpatory evidence. She further claims that counsel was ineffective in failing to obtain this exculpatory evidence from the state prior to trial. [ECF 1, p. 21-22].

Petitioner has come forward with nothing to show that the state knowingly withheld exculpatory evidence. Nothing in the record establishes whether the state conducted tests comparing the blood in the car with Petitioner's blood. Petitioner does not state whether the state actually took a blood sample from her pursuant to

the court's order. Consequently, Petitioner's conclusory and speculative contention falls far short of establishing a *Brady* violation. A court cannot speculate as to what evidence the defense might have found if the information had been disclosed. *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

Petitioner also fails to establish that the evidence suppressed was material or that the result of the trial would have been different if the allegedly suppressed information had been disclosed to the defense. *Strickler v. Green*, 540 U.S. 263, 287 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419 (1995). "The question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 540 U.S. at 287 (quotation omitted).

In light of the overwhelming evidence presented at the trial, any blood test results would not have undermined the verdict.   Petitioner's DNA would have likely been in her vehicle. While the presence of her DNA in blood in the vehicle might have slightly supported her claim that she thought that the victim pricked her with a needle, the state could have countered this argument by pointing to the lack of evidence of an injury to Petitioner's arm.

71

In this case, given the facts adduced at trial, which included testimony of witnesses, no showing has been made that had the information been disclosed, and then used for impeachment of the state's witnesses and/or the investigating officials, the outcome of the trial would have been different. Nothing of record in the state forum or this federal proceeding establishes a *Brady* violation. Petitioner has not established prejudice under *Strickland* arising from counsel's failure to pursue this claim.

Accordingly, the state trial court's denial of **claim 4** in the Rule 3.850 proceeding, which was then affirmed on appeal, did not constitute a decision that was contrary to or an unreasonable application of federal constitutional law. Therefore, Petitioner is not entitled to habeas relief. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor, supra*.

## VI. Cautionary Instruction Re *Clisby* Rule

Finally, this Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013)(citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the

extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII.   Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## VIII.   Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal but must

obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, Petitioner may bring this argument to the attention of the district judge in objections.

## IX. Conclusion

Based upon the foregoing, it is recommended that:

1.    the federal habeas petition be DENIED;

2.    a certificate of appealability be DENIED; and

3.    the case CLOSED.

Objections to this report may be filed with the district court within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the district court judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

SIGNED this 12th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:     Sandra Sysyn, *Pro Se*
        DC# 162841
        Homestead Correctional Institution
        Inmate Mail/Parcels
        19000 SW 377th Street
        Florida City, FL 33034

        Melynda Layne Melear
        Attorney General Office
        1515 N Flagler Drive
        9th Floor
        West Palm Beach, FL 33401-3432
        561-837-5000
        Email: crimappwpb@myfloridalegal.com